No. 103,088

STATE OF KANSAS, *Appellee*, v. VERNIE BURNS, *Appellant*.

(287 P.3d 261)

Opinion filed October 26, 2012.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: After a jury trial, Vernie Burns was convicted of two counts of aggravated criminal sodomy and two counts of aggravated indecent liberties with a child. He was sentenced to three consecutive life sentences, each with a mandatory 40-year prison term. Burns raises two alternative means issues, multiple trial errors, and several issues related to his sentences.

## FACTUAL BACKGROUND

In October 2007, Vernie Burns and his wife, Deborah, frequently spent time at Deborah's daughter's house. Deborah helped her daughter with cooking, laundry, and, on occasion, babysitting her three young granddaughters—K.W., Ar.W., and Av.W.

On November 9, 2007, the children's father picked them up from school because their mother had gone to pick up Burns and his wife for the weekend. When the children learned why their mother was not picking them up, they told their father that they did not want Burns to come over. When their father asked why, the children explained that "he [did] nasty stuff" to them. After a bit more discussion, he called his wife and asked that she not bring Burns to the house. Only Deborah came to the house that evening. The parents left the children with Deborah and went to a church

event, where they discussed the matter with one of the pastors. They called the police the next morning.

Officer Robert Ward responded to their call. He talked to the three children together, getting only the basic outline of their complaints. On November 19, 2007, the girls were interviewed, individually, on video at the Sunflower House—a child advocacy and abuse prevention center. The video recordings of their interviews were admitted at trial and played for the jury. On November 30, 2007, the girls were examined at the Sunflower House. As expected for an exam more than 48 hours after the alleged abuse, the physical examinations showed no injuries.

K.W., who was 8 years old in October 2007, described several touches that occurred in the bedroom she shared with her sisters, Ar.W. and Av.W. She explained that Burns would have her lie on her sister's bed, which was the lower bunk of a bunk bed. Burns would then touch her beneath her clothing on her "butt."

Ar.W., who was 6 years old in October 2007, described one "bad touch" that occurred in the back room under a blanket. She explained that she wanted to hug Burns and that she was falling asleep against him. She said Burns was awake and that he put his hand underneath her clothing and underwear and touched the inside of her bottom. She described a second touch that happened in the front room while she was sharing a blanket with Burns. Again she described the touch as Burns reaching his hand underneath her clothing and touching the inside of her bottom. Ar.W. also testified that she saw Burns touching K.W.'s bottom in their bedroom on one occasion.

Av.W., who was 5 years old in October 2007, explained that Burns touched her several times on different days. She said all of these touches happened in the back room under a blanket where she had joined Burns to watch television. She described Burns reaching under her clothing and touching both her front private (the part she "go[es] pee" with) and inside her back private (the part she "go[es] poop" with). At trial, she added that Burns also touched her with his part that he "go[es] potty with." Av.W. also testified that she had seen Burns touch K.W. in a similar manner in the back room.

Burns was charged with two counts of aggravated criminal sodomy of K.W., two counts of aggravated indecent liberties with Ar.W., and two counts of aggravated criminal sodomy of Av.W. The jury convicted Burns of both counts involving Ar.W., and one count each involving K.W. and Av.W.

## ALLEGED TRIAL ERRORS

Burns alleges that the following trial errors, individually or in combination, prejudiced his right to a fair trial: (1) the manner in which the district court responded to jury questions, (2) the prosecutor's improper statements during closing arguments, and (3) the error in the *Allen*-type instruction. An examination of the total record shows that these cumulative errors denied Burns a fair trial. Accordingly, we reverse his convictions and remand for new trial.

*Did the district court err in answering a question from the jury?*

Burns claims that the trial court twice violated his right to be present during critical stages of his trial; both instances involved questions from the jury during deliberations. In the first incident, the district judge received two questions from the jury. With defense counsel present, the judge spoke to the attorney for the State on the telephone. With Burns and his counsel present, the judge read the questions into the record, proposed his answers, and asked if the defendant had any objection. The jury had sent a question requesting a DVD player to review the girls' Sunflower House interviews, and the judge answered in the affirmative and sent the equipment in with the bailiff. The jury also requested the initial police report, which the judge denied because it was not an admitted exhibit. Burns complains it was error to allow the DVD player to be sent back to the jury room instead of playing the DVD again in open court. Burns concedes that this alleged violation was harmless.

The jury also requested a read back of certain testimony; Burns does not allege any violations with regard to the read back. When the jury returned to the jury room to consider its verdict the following day, the jury sent out a question that is the basis for Burns'

second allegation. The following is a portion of the record addressing this question:

"THE COURT: Let the record reflect the same appearances. The defendant and counsel are present outside the presence of the jury.

"We are in receipt of another question from the jury. And I will quote this into the record: Can we get clarification from Judge on Count 2 and Count 6?

"When I received that, I sent this message back with the bailiff: Can you be more specific on what you want? They came back then with this question: In comparison to Count 1, is Count 2 meaning the crime happened multiple times? In comparison to Count 5, is Count—they crossed it out, but I think they mean Count 6—meaning the crime happened multiple times?

"The accurate answer to their question is, I believe: Yes, comma, it happened more than once, period. That's how I propose to answer both questions. Any objections?

"MS. LIDTKE: No.

"MR. MAHONEY: Judge, this is the form I would ask that you couch it in, the terms: The State has alleged it happened more than once. You're giving them the impression this happened more than once. I realize it's semantics.

"THE COURT: It is. And I'm not going to do that. I've answered it and I will have the bailiff send this back further with the—they have asked for some more testimony to be read back. The court reporter is isolating those parts of the testimony now and we will bring them back. She is just about ready with that, too. So we have got a few more items on my regular docket. As soon as we get a window of time, we will read back the testimony. Thank you."

### Standard of Review

Burns frames the issue as a deprivation of his right to be present at every critical stage of his trial. If his right to be present is at issue, the appropriate standard of review is a question of law over which this court exercises unlimited review. See *State v. Martinez*, 288 Kan. 443, 449, 204 P.3d 601 (2009).

If instead the issue is whether the trial judge properly responded to a jury question during deliberations, the standard of review is abuse of discretion. *State v. Adams*, 292 Kan. 151, 163, 254 P.3d 515 (2011). In *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 901 (2011), *cert. denied* 132 S. Ct. 1594 (2012), we clarified our abuse of discretion standard as follows:

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial

competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. [Citation omitted.]"

### Analysis

Burns claims that sending an answer back to the jury rather than reading the answer in the presence of the defendant violates his constitutional right to be present at all critical stages of the trial, citing *State v. Coyote*, 268 Kan. 726, 732, 1 P.3d 836 (2000). Burns' reliance on *Coyote* is misplaced. In *Coyote*, this court stated:

"The trial court's written response of 'no' to the jury without more is error. A trial court, when confronted with a question submitted to it by a jury during deliberations is required to advise counsel, provide the parties with the question, and give them an opportunity for input in the presence of the defendant. *Thereafter, the court is required to respond in writing to the jury in the presence of the defendant.* The court did not follow this procedure and its failure constitutes error." (Emphasis added.) *Coyote*, 268 Kan. at 732.

Here, the trial court followed the procedure outlined by this court in *Coyote*. Burns and his counsel were present and informed of the jury's question. The judge asked if there were any objections, and defense counsel proposed an alternative phrasing for the answer. The judge rejected this phrasing and answered the question in writing, "Yes, it happened more than once."

Based on the record of the trial, the district judge requested clarification on the question from the jury without the defendant's presence. But at the hearing for a new trial, the judge relates a different version of events. At that time, the judge says the defendant and counsel were in the courtroom when the generic question was discussed. The judge describes the events as:

"The first question that they wrote out was, can we get clarification from Judge on Counts 2 and 6? The defendant was brought into the courtroom. We discussed the matter with counsel and the defendant was present when the answer was crafted and that was, and I'll quote, can you be more specific on what you want? We sent that back to the jury and they responded with two questions."

But even if the trial record is more accurate, it is difficult to imagine any impact the judge's request for clarification had on the verdict. The jury's first question—"Can we get clarification from Judge on Count 2 and Count 6?"—is too generic to answer. Burns was present when the judge read the amended question and pro-

posed his answer. Defense counsel was allowed to object and propose an answer to the jury's question.

The more compelling argument is whether the judge improperly answered the jury question and as a result improperly injected himself into the jury deliberations. This question is reviewed under the more lenient abuse of discretion standard. But even under that standard, a judge should not answer a jury question by concluding that the crime happened on more than one occasion, especially when the defendant is charged with multiple counts of the crimes. The primary question in reviewing the court's answer to a jury question is " 'whether [the answer] was a correct statement of the law as applied to the facts brought out in the evidence.' " *State v. Murdock*, 286 Kan. 661, 683, 187 P.3d 1267 (2008) (quoting *State v. Wilson*, 169 Kan. 659, 663, 220 P.2d 121 [1950]).

The State argues that if the jury had read the judge's answer to mean "the court believes it happened more than once" and placed an undue reliance on that answer, the jury would have returned guilty verdicts for counts two and six, which it did not. This ignores the fact that the jury could have believed the crimes did not occur at all as to those two victims but, because of the judge's answer, felt compelled to find Burns guilty at least once for each victim. We are therefore left to speculate as to what effect the judge's answer had—none or undue prejudice.

When the jury asked for clarification on the difference between two identical counts, the judge responded by telling the jury, "Yes, it happened more than once." By suggesting that the court believed the crimes happened multiple times when the defendant was charged with multiple counts, the judge essentially directed a verdict against the defendant. The court could properly have given Burns' proposed answer: "The State has alleged it happened more than once." Or, the court could have given an answer that referred to the instructions explaining how the jury was supposed to consider multiple counts when multiple acts are alleged by the State. It was an abuse of discretion for the judge to answer a jury question by stating that the crime happened at all, let alone that the crime happened more than once.

*Did the State commit prosecutorial misconduct during closing arguments by urging the jury to let the girls know "they did the right thing"?*

Burns alleges that the State committed prosecutorial misconduct during closing arguments when the prosecutor urged the jury to let the victims "know that they did the right thing" by reporting the crimes. The State concedes that the comment was improper based on this court's holding in *State v. Martinez,* 290 Kan. 992, 1015, 236 P.3d 481 (2010). But the State argues that the misconduct was not gross and flagrant, did not show ill will, and was harmless in light of the evidence presented against the defendant.

Burns also complains about the prosecutor's discussion of charging decisions during closing arguments, regarding the State's decision to charge two counts based on the events described by Av.W. despite the child's description in the initial interview that it happened "eight to ten times." Burns acknowledges that the jury found him not guilty of the second count of aggravated criminal sodomy against Av.W. despite the prosecutor's comments. Instead, Burns alleges that this comment, along with the statement "let them know that they did the right thing," shows ill will on the part of the prosecutor.

### Standard of Review

"This court employs a two-step analysis for allegations of prosecutorial misconduct regardless of whether a timely objection is made. First, the court determines whether the prosecutor's statements exceeded the wide latitude of language and manner afforded a prosecutor in making closing arguments. Inherent in this latitude is the prosecutor's freedom to argue reasonable inferences from the evidence. Second, the court must determine whether the prosecutor's comments constitute plain error. This occurs when the statements are so gross and flagrant they prejudiced the jury against the defendant and denied the defendant a fair trial. [Citation omitted.]

"The second step requires the examination of three factors: (1) whether the misconduct was so gross and flagrant it denied the accused a fair trial; (2) whether the remarks showed ill will by the prosecutor; and (3) whether the evidence against the defendant was of such a direct and overwhelming nature that the prosecutor's statements would not have much weight in the jurors' minds. [Citation omitted.]

"But none of these factors is controlling. Further, the third factor can never override the first two factors until the harmlessness tests of both K.S.A. 60-261

(*prosecutor's statements were inconsistent with substantial justice*) and *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967) . . . , have been met. [Citations omitted.]" *Martinez*, 290 Kan. at 1012.

### Analysis

The State acknowledges that this was the same prosecutor as in *Martinez*. But this case was tried more than a year before the *Martinez* decision was published, so the prosecutor did not disregard the law in making this statement. The State argues that the fact that this prosecutor used that remark in closing arguments for many child sexual abuse cases actually shows that she did not grossly or maliciously target this particular defendant.

As in *Martinez*, the statement was made to appeal to the jurors' parental and protective instincts to validate and affirm the children's beliefs. As such, it was an improper comment on matters outside the evidence and the law. Unlike *Martinez*, the disputed statement was not made during the State's rebuttal closing argument in response to something the defense attorney said during his closing argument. Here, the statement was made during the first portion of the State's closing argument. But the statement does not suggest that the children will face future harm if the jury returned a not guilty verdict.

Finally, the jury returned not guilty verdicts on two of the six counts charged against Burns. The State suggests that this supports finding that the statement had no reasonable possibility of changing the result of the trial because the jury overlooked the statement at least with regard to two of the charges. But, as we have already discussed, that verdict may have been influenced by the judge's improper answer to a jury question.

Even so, considering the entirety of closing arguments, the statements are not so gross and flagrant that they denied Burns a fair trial. The remarks do not appear to show ill will by the prosecutor. And the evidence, albeit hinging entirely on the credibility of the three victims, provided substantial evidence of guilt. The statement, while error, was not reversible error standing alone.

*Did the district court err by instructing the jury, prior to deliberation, that "[a]nother trial would be a burden on both sides"?*

Burns argues that it was clear error for the trial court to include the following language in its instructions to the jury: "Another trial would be a burden on both sides." This language was included in the *Allen*-type instruction. Burns did not object to this instruction. The State concedes that it was error for the court to include that language in the instruction based on *State v. Salts*, 288 Kan. 263, Syl. ¶ 2, 200 P.3d 464 (2009), although *Salts* was decided after the trial in this case. We agree that the instruction was in error. While this error would not be grounds for reversal alone, it contributes to the cumulative trial error determination.

CUMULATIVE ERROR

*Standard of Review*

"This court evaluates cumulative error claims by determining 'whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' " *State v. Edwards*, 291 Kan. 532, 553, 243 P.3d 683 (2010) (quoting *State v. Ellmaker*, 289 Kan. 1132, Syl. ¶ 12, 221 P.3d 1105 [2009]).

"We recently clarified that under the harmless error standards of K.S.A. 60-261, K.S.A. 60-2105, and *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967), the test is whether the error affected substantial rights, meaning whether the error affected the outcome of the trial. See *Ward*, 292 Kan. 541, Syl. ¶¶ 5-6. As we stated in *Ward*:

'The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error infringes upon a right guaranteed by the United States Constitution. If it does not, the . . . court should apply K.S.A. 60-261 and determine if there is a reasonable probability that the error did or will affect the outcome of the trial in light of the entire record. If the fundamental failure infringes upon a right guaranteed by the United States Constitution, the . . . court should apply the constitutional harmless error standard defined in *Chapman*, in which case the error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *Ward*, 292 Kan. 541, Syl. ¶ 6." *State v. Tully*, 293 Kan. 176, 193-94, 262 P.3d 314 (2011).

*Analysis*

Burns argues that the combination of the judge's error in answering the jury question, the State's improper statements during closing arguments, and the error in the *Allen*-type instruction combined to prejudice him and deny him a fair trial. The State maintains that no substantial errors were made during the trial and argues that the evidence was overwhelming. When considering a claim of cumulative error, this court examines the errors in the context of the record as a whole. We consider how the trial court dealt with the errors as they arose, the number of errors committed, the nature of those errors, the relationship of the errors to one another, and the strength of the evidence against the defendant. *Tully*, 293 Kan. at 205-06.

As discussed above, there were three errors in this case. These errors occurred in close temporal proximity, playing off one another to deny Burns his right to a fair trial. The jury was first improperly instructed with the inaccurate and misleading language used in the *Allen*-type instruction. Immediately thereafter, the prosecutor improperly appealed to the emotions of the jurors, asking them to protect the child victims by supporting their version of the events. Finally, the judge compounded these errors by responding to a jury question by informing the jury that the abuse had happened more than once. The interrelationship of these errors significantly increases their effect. We conclude that there is a reasonable probability that the cumulative errors affected the verdict. Because these errors substantially prejudiced Burns and denied him a fair trial, his convictions must be reversed and the case remanded for a new trial.

## SENTENCING ISSUES

Because we are reversing Burns' convictions based on cumulative trial errors, we would not ordinarily address other claims of error. We consider those claims to determine a sufficiency of the evidence claim for double jeopardy purposes. *Burks v. United States*, 437 U.S. 1, 16-18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). While two of the sentencing issues Burns raised are moot, the third merits mention. Burns alleges that the State failed to prove his age

at trial and that the trial court's failure to include the element of age on the jury instructions prohibits the State from seeking the enhanced sentence under the provisions of Jessica's Law. The State agreed with Burns' request that the case be remanded for resentencing using the grid sentence. But we are unable to decide this issue in light of the remand because the parties have not argued this issue before the trial court. See *State v. Hernandez*, 294 Kan. 200, 211, 273 P.3d 774 (2012).

## ALTERNATIVE MEANS

Like the sentencing issues, the alternative means claims Burns raised are rendered moot by our reversal of his convictions. But we may also address such a claim of error to provide guidance to the trial court on issues likely to arise on remand. See *State v. Wells*, 289 Kan. 1219, 1234, 221 P.3d 561 (2009). In the recently decided case, *State v. Brown*, 295 Kan. 181, 284 P.3d 977 (2012), we expanded our analysis of alternative means. We provide guidance on how that analysis applies to the crimes charged in this case.

### Standard of Review

"A criminal defendant has a statutory right to a unanimous jury verdict. But unanimity is not required as to the means by which the crime was committed so long as substantial evidence supports each alternative means."

"In an alternative means case, the State must present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. When the jury is instructed on alternative means of committing a single crime and the State fails to present sufficient evidence to support both means, reversal is required."

"In determining if the legislature intended to state alternative means of committing a crime, a court must analyze whether the legislature listed alternative distinct, material elements of a crime—that is, separate or distinct *mens rea, actus reus*, and, in some statutes, causation elements. Or, did the legislature list options within a means, that is [,] options that merely describe a material element or describe a factual circumstance that would prove the element?"

"The listing of alternative, distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding supersufficiency of the evidence. However, the legislature generally does not intend to create alternative means when it merely describes a material element or a factual circumstance that would prove the crime. Such descriptions are secondary mat-

ters—options within a means—that do not, even if included in a jury instruction, raise a sufficiency issue that requires a court to examine whether the option is supported by evidence." *State v. Rojas-Marceleno*, 295 Kan. 525, Syl. ¶¶ 13, 14, 15, 16, 285 P.3d 361 (2012).

### Aggravated Criminal Sodomy

Burns claims that, as charged and instructed in this case, aggravated criminal sodomy could be committed by (1) anal penetration by a body part or (2) anal penetration by an object. Burns alleges that there was only sufficient evidence of anal penetration by a body part, specifically, a hand. The State responds that these are not alternative means because these alternatives were found in the statutory definition, rather than in the element instruction. Further, the State argues that a hand is an object; therefore, even if alternative means were charged, there was sufficient evidence of both alternative means.

As we stated in *Brown*, the court's analysis must begin by determining whether the jury was presented with alternative means on this count of aggravated criminal sodomy. To do this, we examine the language of the relevant statutes, K.S.A. 21-3501(2) and K.S.A. 21-3506(a)(1). We review whether alternatives within a statute define alternative means or an "option within a means" de novo because this is a question of law. *Rojas-Marceleno*, 295 Kan. at 547.

At the time of the offense, K.S.A. 21-3506(a)(1) provided: "Aggravated criminal sodomy is: (1) Sodomy with a child who is under 14 years of age." The proposed alternative means comes from the definition of sodomy in K.S.A. 21-3501(2), which states: " 'Sodomy' means oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; anal penetration, however slight, of a male or female by any body part or object; or oral or anal copulation or sexual intercourse between a person and an animal."

K.S.A. 21-3506(a)(1) proscribes the crime of engaging in the act of sodomy with a child who is under 14 years of age. The language and punctuation of K.S.A. 21-3501(2) indicates that there are three general but distinct ways in which one can complete the act of sodomy: (1) oral contact of genitalia, (2) anal penetration, and (3) sexual intercourse with an animal. We note that each act described within the definition of sodomy is separate and distinct from the

other—the acts are factually different from one another, and one act is not inclusive of the others. Furthermore, each act is separated by a semicolon, which suggests that the legislature intended for each act to constitute a specific means of completing the general act of sodomy.

The *actus reus* of aggravated criminal sodomy under K.S.A. 21-3506(a)(1) is the defendant's act of sodomy with a child who is under 14 years of age. The definition in K.S.A. 21-3501(2) creates three alternative means of committing sodomy, but within the second alternative means, the anal penetration charged here, the definition only presents "options within a means," that is, various factual circumstances that would prove the crime.

In the phrase "anal penetration, however slight, of a male or female by any body part or object," the legislature did not define two or more distinct *actus reus* for this crime. The language on which Burns focuses, "by any body part or object," merely describes different factual circumstances by which a defendant might perpetrate the required anal penetration. The inclusion of "by any body part or object" does not state material elements of sodomy but merely gives a full description of one of the means of committing sodomy; thus, it does not establish two alternative means of committing anal sodomy. Instead, the phrase only establishes one means of committing sodomy—anal penetration. The language "by any body part or object" does not establish alternative means, but options within a means. Therefore, the inclusion of this language in the jury instructions does not make this an alternative means case and does not trigger concerns of jury unanimity. Burns concedes that there was sufficient evidence of anal penetration by a body part, specifically, his hand. As a result, Burns is not entitled to reversal of his convictions for aggravated criminal sodomy based on this argument.

### Aggravated Indecent Liberties

Burns was charged and the jury was instructed under the statutory language "with the intent to arouse or satisfy the sexual desires of either [the child] or the defendant, or both." Burns claims that aggravated indecent liberties could be committed by lewd

touching with the intent (1) to arouse the child, (2) to arouse himself, (3) to arouse both, (4) to satisfy the sexual desires of the child, (5) to satisfy his own sexual desires, or (6) to satisfy the sexual desires of both the child and the defendant. Burns alleges that no evidence was presented on whether he intended anyone involved in these incidents to be aroused, but he concedes that circumstantial evidence might support an inference of intent to satisfy his own sexual desires. Following our analysis in *Brown*, 295 Kan. 181, we reject Burns' argument that these different mental states create alternative means.

As we stated in *Brown*, K.S.A. 21-3504(a) does provide several alternative means of committing the crime of aggravated indecent liberties with a child. Burns, like Brown, was charged with only one of these means—that set forth in K.S.A. 21-2504(a)(3)(A), any lewd fondling or touching of either a child who is under 14 years of age or the offender "done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both." See *Brown*, 295 Kan. 181, Syl. ¶ 12. The language on which Burns focuses is merely a description of the factual circumstances that may prove the single, distinct, material element of intent to arouse or satisfy sexual desires. This phrase merely outlines options within a means.

As a result, the jury was not instructed on alternative means, and the instruction does not trigger concerns of jury unanimity. Burns was charged with a single means of committing aggravated indecent liberties with a child. The jury, following the instructions given in this case, had to unanimously agree that Burns possessed the culpable mental state of an intent to arouse or satisfy sexual desires. Burns concedes that circumstantial evidence allowed the jury to infer that he acted with the intent to satisfy his own sexual desires.

Because this case does not present alternative means and Burns concedes there was evidence of sexual intent, he is not entitled to reversal.

Reversed and remanded with directions.