NOT DESIGNATED FOR PUBLICATION

No. 114,718

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CECIL RICHARD PRESTON, JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed March 24, 2017. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lindsey Debenham*, legal intern, *Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*:  Cecil Richard Preston, Jr., appeals from his conviction for possession of methamphetamine. He asserts that the court's jury instruction on the crime charged was improperly broader than the language contained in his indictment. In addition, he contends the prosecutor made improper arguments during his trial warranting the reversal of his conviction. Finally, Preston argues the cumulative effect of these errors requires reversal. Because we find no substantial errors requiring reversal, we affirm.

1

FACTS

On February 1, 2014, Officers William Lister, Matthew Cobb, and Kurtis VanDonge were working the third patrol shift for the Topeka Police Department. The officers were on foot patrol at 2 a.m. that day when they entered an apartment building on Southwest Harrison Street checking the halls and basement for noise, loiterers, and other problems.

The officers entered the basement, and Lister shined his flashlight into an empty room near the elevator. With his flashlight, Lister saw a male subject facing him; he later identified Preston as the man he observed. Lister first looked at Preston's hands to be sure he was not armed; instead, Lister saw that Preston had a bottle of liquor in one hand and a small white object in the other hand. Preston immediately threw away the white object in his hand. Cobb, who entered the room after Lister, observed Preston with his hands at his side, then one hand moved, and Cobb saw something in the air which landed on the ground a few inches from Preston's foot.

Lister immediately pulled Preston out of the room and handcuffed him. Cobb went into the room and picked up the white object. Upon examining it, Cobb observed what appeared to be a clear plastic baggie containing a white crystalline substance; both Lister and Cobb testified the white substance appeared to be methamphetamine.

Lister later field tested the substance, which tested positive for methamphetamine. The officers searched Preston's person and found nothing else incriminating. There were no other persons found in the basement. Lister observed nothing else on the floor in the basement room. Cobb was wearing a body camera the night of the arrest. Cobb began video recording when he started asking detailed questions to Preston after he was arrested.

The white substance was sealed in an evidence envelope and sent to the Kansas Bureau of Investigation (KBI) for additional testing. A KBI chemist testified as to the chain of evidence and confirmed that the baggie provided to her in the case contained 0.11 grams of methamphetamine.

In March 2014, Preston was indicted by a state grand jury of "unlawfully, feloniously, and *intentionally*, possess[ing] any opiate, opium or narcotic drug, or a stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107 . . . to wit: methamphetamine, contrary to the form of the statutes." (Emphasis added.)

During the trial, the court's opening instruction described the charge of possession of methamphetamine which was later defined in the jury instructions. At the conclusion of the trial, the court gave Instruction No. 7—without objection by Preston. This instruction advised the jury that Preston was charged with unlawful possession of methamphetamine and that he pled not guilty to the charge. The instruction stated that to establish the charge, it had to be proved that Preston possessed methamphetamine on or about February 1, 2014, in Shawnee County, Kansas. The instruction went on to define "'[p]ossession'" as "having joint or exclusive control over an item with *knowledge of and the intent to have* such control or knowingly keeping some item in a place where the person has some measure of access and right of control." (Emphasis added.) This instruction matches PIK Crim. 4th 57.040 submitted by the State prior to trial; the defense did not provide any proposed written instructions. In addition, the court gave Instruction No. 8, which asserted that the "State must prove that the defendant committed the crime *either* intentionally or knowingly" (emphasis added), and provided the standard definition for those terms. Preston only objected where this instruction was placed in the order of instructions, not the instruction itself.

After hearing the testimony set forth above, the jury convicted Preston of possession of methamphetamine. Preston was ultimately sentenced to the standard

3

presumptive sentence of 12 months' probation with an underlying prison term of 13 months' incarceration. Preston timely appealed from his conviction and sentence.

ANALYSIS

*Jury instructions*

On appeal, Preston first argues that the jury instruction on the charged crime varied from the language of the grand jury indictment. Preston seems to allege that instruction was inadequate because the indictment charged "intentional" conduct, but the instruction permitted the jury to convict him upon proving conduct which was *either* intentional or knowingly.

Preston acknowledges that his counsel did not object to the instruction at trial. Accordingly, review of this issue is controlled by K.S.A. 2016 Supp. 22-3414(3) and the analysis set out in *State v. Herbel*, 296 Kan. 1101, Syl. ¶ 7, 299 P.3d 292 (2013), and *State v. Williams*, 295 Kan. 506, 511, 286 P.3d 195 (2012). As stated in *Williams*, K.S.A. 2016 Supp. 22-3413(3) creates a procedural hurdle by stating that no party may assign as error a district court's giving or failure to give a particular jury instruction unless the giving or failure to give the instruction is clearly erroneous. *State v. Potts*, 304 Kan. 687, 701-02, 374 P.3d 639 (2016). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Walker*, 304 Kan. 441, 446, 372 P.3d 1147 (2016).

At the time of Preston's arrest, K.S.A. 2013 Supp. 21-5706(a) made it unlawful for any person to "possess any opiates, opium or narcotic drugs" identified in portions of the list of Schedule II drugs. "'Possession'" is defined as "having joint control or exclusive control over an item *with knowledge of and intent* to have such control or knowingly

4

keeping some item in a place where the person has some measure of access and right of control." (Emphasis added.) K.S.A. 2016 Supp. 21-5701(q). This statutory language matches the instruction given to the jury at the conclusion of the trial—Instruction No. 7. However, Preston's objection seems to take issue with Instruction No. 8—which is patterned after PIK Crim. 4th 52.010—by asserting the State must prove Preston acted knowingly *or* intentionally in possessing the narcotic.

Preston relies heavily on *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009). *Trautloff*, however, does not clearly apply to the circumstances of this case. In *Trautloff*, the defendant was charged with promoting the performance of sexually explicit conduct by a minor and displaying such a picture. However, the jury instruction was not limited to "display[ing]"; rather, the instruction used the full definition of promoting including "procuring, selling, providing, lending, mailing, delivering, transferring, transmitting, distributing, circulating, disseminating, presenting, producing, directing manufacturing, issuing, publishing, displaying, exhibiting or advertising" the sexual performance. 289 Kan. at 801-02. Because of the broad scope of evidence presented regarding the defendant's activity, the court found that it could not rule out the possibility that the jury found the defendant guilty of actions not charged in the information and reversed the conviction. 289 Kan. at 802-03.

In this case, however, the instructions at issue addressed the intent required under the statute to convict Preston. The statute itself required Preston to act both knowingly and intentionally even though the indictment used the phrase "unlawfully, feloniously, and *intentionally*, possess[ing]" methamphetamine. The difference in omitting "knowingly" makes little difference.

"In 2011, our legislature amended the definitions of the various culpable mental states. The terms 'intentionally' and 'knowingly' are now separated and ranked by degree, with 'intentionally' being ranked as a higher degree of culpability than 'knowingly.'

5

K.S.A. 2013 Supp. 21-5202(b)(1)-(2). The statute provides that when intentional conduct is proven, knowing conduct is also proven. K.S.A. 2013 Supp. 21-5202(c)." *State v. Gooding*, 50 Kan. App. 2d 964, 978-79, 335 P.3d 698 (2014).

Consequently, Preston's claim that the instruction was too broad by adding uncharged elements such as in *Trautloff* is misplaced. The sole issue is whether the disjunctive "or" used in Instruction No. 8, instructing that the State had to prove Preston intentionally *or* knowingly possessed the methamphetamine, presents clear error in this case. Preston claims reversal is required because it is possible the jury did not believe Preston intended to possess the methamphetamine (inferring that it believed he only knowingly possessed the methamphetamine).

But even if we accept, arguendo, that Instruction No. 8 does not precisely mirror the language of the charge in the indictment handed down by the jury against Preston, we still cannot conclude he is entitled to reversal of his conviction and a new trial. Based on the record as a whole, Preston has failed to convincingly show "'the appellate court that the giving of the instruction would have made a difference in the verdict.'" *Walker*, 304 Kan. at 446. Preston was found alone in a darkened area of a building with both a bottle of liquor and the baggie in his hands. He quickly threw the baggie aside when the officer's flashlight was shined upon him. There is no indication anyone else was present until after Preston was arrested and no reasonable basis to infer that Preston found the drugs in the unlit basement room and picked it up not knowing what it contained. Thus, while it may have been error for the court to use the term "or" in Instruction No. 8, there is no clear showing that this error impacted the jury's verdict.

*Prosecutorial misconduct allegations*

In his second issue on appeal, Preston challenges portions of the prosecutor's closing argument, asserting the prosecutor misstated the law in discussing the nature of an intentional action. Specifically, Preston takes issue with the prosecutor's statement

6

regarding the requirement that the defendant had control of the drug with knowledge and the intent to control the item. The prosecutor then stated:

> "Well, ladies and gentlemen, let's use our common sense here. If you're holding something in your hand, whether you pick it up off the ground or someone else gives it to you, you know what's in your hand. You know what you're holding. And the only reason you're holding something in your hand is if you have the intent to do that, if you have the knowledge that you're doing that. There was no out off [*sic*] body experience here, no not understanding what was going on, no evidence of that whatsoever. The defendant knew what he was holding in his hand. He was possessing it."

The Supreme Court recently changed the legal analysis relating to claims of improper actions of a prosecutor during trial to using a "prosecutorial error" focus. See *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). Under *Sherman*:

> "Appellate courts will continue to employ a two-step process to evaluate claims of prosecutorial error. These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman*[*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

The *Sherman* opinion was issued after Preston's brief was filed but was discussed in the State's brief. Thus, the parties rely on different legal analyses in discussing this

7

issue. However, the application of either analysis reaches the same result. Preston correctly notes that misstating the evidence is a serious violation and ordinarily constitutes what is now "prosecutorial error." *State v. Bridges*, 297 Kan. 989, 1014, 306 P.3d 244 (2013). This begs the question, however, of whether the prosecutor's statements about the extent to which the jury could infer the requisite culpable mental state from the facts in this case exceeds the wide latitude permitted to prosecutors in crafting closing arguments. *State v. Scott*, 271 Kan. 103, 114, 21 P.3d 516 (2001). This latitude allows a prosecutor to make reasonable inferences based on the evidence. *State v. De La Torre*, 300 Kan. 591, 608, 331 P.3d 815 (2014).

Preston cites no authority for his contention that the prosecutor's arguments exceeded the wide latitude the prosecutor possessed to argue the evidence. The baggie containing methamphetamine was seen by two officers in Preston's hand. Preston was alone in a dark room when discovered by police. Preston was standing up and there was no evidence presented that Preston somehow stumbled onto the baggie in the darkened room by happenstance. Under the facts of this case, the prosecutor did not argue unreasonable inference based on the evidence presented.

Preston also takes issue with the prosecutor's statement in his rebuttal closing argument responding to defense counsel arguments that Officer Cobb did not record their investigation of the basement with his body camera. In rebuttal, the prosecutor stated, "And if there was a video, what would it show you? It would show you exactly what Officer Cobb and Officer Lister testified to. You have those facts already. You don't need that camera." Preston asserts this remark was the prosecutor offering a personal opinion as to the credibility of witnesses.

We agree that the prosecutor's comments constituted a personal vouching for the State's evidence in this case and thus were unquestionably improper. This is true even though the comments were made in response to defense counsel's statements. Our

Supreme Court recently recognized that "'a prosecutor's improper comment or argument can be prejudicial, even if the misconduct was extemporaneous and made under the stress of rebutting arguments made by defense counsel. The extemporaneous, rebuttal nature of a prosecutor's argument is merely a factor to be considered by an appellate court.' [Citations omitted.]" *State v. Roeder*, 300 Kan. 901, 934, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015). Also, in *State v. Sprague*, 303 Kan. 418, 429, 362 P.3d 828 (2015), our Supreme Court explained that even if the prosecutor makes the improper comment in rebuttal, "'[t]he open-the-door rule does not insulate a prosecutor from a finding of misconduct.' [Citations omitted.]"

In this case, the prosecutor's comments would constitute misstating the evidence—as there was no video—or a prosecutor's efforts to backdoor a personal opinion as to the credibility of the officers. Much of the defense was based on inconsistencies between the officers' testimony regarding their approach to the room, how Preston was seen tossing or dropping or throwing the baggie, how the baggie was collected and put into evidence, in addition to the lack of use of Officer Cobb's body camera. While the prosecutor could have argued that the discrepancies between the officers' testimony were minor, he went a step too far in asserting what a nonexistent video would show.

Under the pre-*Sherman* analysis, the second step of the two-step analysis, the appellate court considers three factors: (1) whether the misconduct was gross and flagrant, (2) whether the misconduct showed ill will on the prosecutor's part, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. *State v. Williams*, 299 Kan. 509, 540, 324 P.3d 1078 (2014). Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 2016 Supp. 60-261 and *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), have been met. *Williams*, 299 Kan. at 540-41. Under the statutory harmless error standard, the court must determine whether "'there is a reasonable

9

probability that the error did or will affect the outcome of the trial in light of the entire record.'" 299 Kan. at 541. Under *Sherman*, the court simply focuses on the constitutional harmless error standard. 305 Kan. at 109.

In this case, the prosecutor erred in opining what the nonexistent body camera video would show. Based on the totality of the facts, however, the State has shown that the error did not affect the outcome of the trial in light of the entire record. Therefore, any prosecutorial error was harmless beyond a reasonable doubt. The jury took over 3 hours to consider the evidence and the arguments, including defense counsel's cross-examination of the officers' varying testimony. We find this one statement by the prosecutor, even if error, was not likely to affect the jury's decision in light of the minor nature of the discrepancies in the officers' testimony.

*Cumulative error*

Finally, Preston argues he was denied a fair trial due to cumulative error. Cumulative trial errors, when considered collectively, may require reversal of the defendant's conviction when the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. *State v. Burns*, 295 Kan. 951, 960, 287 P.3d 261 (2012), *overruled on other grounds by State v. King*, 297 Kan. 955, 305 P.3d 641 (2013). In light of the consistent testimony that Preston was standing in an unlit room and discovered holding a baggie of what was later determined to be methamphetamine, with no one else present, any error in the instruction and in the prosecutor's one improper statement did not collectively deprive Preston of a fair trial.

Affirmed.