NOT DESIGNATED FOR PUBLICATION

No. 116,670

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN CHRISTOPHER HARRISON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed February 16, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE and ATCHESON, JJ.

PER CURIAM: John Christopher Harrison was arrested in Johnson County, Kansas, and charged with two counts of battery on a law enforcement officer, one count of interfering with a law enforcement officer, one count of driving while his license was suspended, and one count of transporting an open container. Later, the State added the charge of one count of failure to use a seatbelt. Harrison was convicted of all charges.

1

On appeal, Harrison contends (1) that the trial court abused its discretion in denying his motion for mistrial; (2) that the evidence was insufficient to support his seatbelt violation conviction; (3) that the instruction relating to the seatbelt violation was clearly erroneous; and (4) that the trial court committed reversible error when it sent a response to a jury question, after the response was approved by defendant and his counsel, to the jury room rather than reading it in open court. Because we find no merit in these issues, we affirm.

On July 30, 2015, Jacob Guthier, a Lenexa, Kansas patrol officer was parked in his marked police vehicle when he observed a vehicle drive by his position. Guthier noted that the vehicle's driver was not wearing his seatbelt; when the driver saw the police vehicle, Guthier saw the driver reach up and pull his seatbelt across his lap. Guthier followed the vehicle briefly through a construction zone and then he activated his vehicle's emergency lights. The driver of the vehicle pulled over into a mall entrance and made a U-turn before coming to a stop. There was a passenger in the front seat of the vehicle as well as the driver. Guthier called for a backup officer to assist. Officer Christine DeVasto responded to the scene. The patrol vehicle's camera was activated before the actual stop and recorded most of the activity relevant to this appeal.

After the stop, Officer Guthier walked to the driver's side of the vehicle and spoke with the driver. The officer told the driver that he was being stopped because he was not wearing his seatbelt. The officer asked for his driver's license and proof of insurance information. The driver did not have a license in his possession, but he told the officer his name was John C. Harrison and that his license was issued in Kansas; Harrison also gave the officer his date of birth. At trial, Guthier and DeVasto identified the defendant as that driver.

After obtaining Harrison's information, Guthier returned to his vehicle and contacted the dispatcher to determine whether Harrison had a Kansas license or any

active arrest warrants. Shortly afterwards, the dispatcher told the officer that Harrison's driver's license had been suspended for failing to comply with citations. At the same time, the dispatcher reported that Harrison had active warrants for his arrest from Kansas City, Kansas. The dispatcher also confirmed that the warrants were still active and that the Kansas City Police Department would respond to take custody of Harrison if he was arrested.

Under departmental policy, Guthier was required to arrest Harrison because of the active warrants. Guthier walked to the driver's side of the vehicle while Officer DeVasto walked to the passenger side. Guthier activated the video camera on his uniform. Guthier then asked Harrison to step out of his vehicle and to step to the back of the vehicle. Harrison began to roll up both his window and the passenger's window; Harrison also reached over to lock the passenger door. These actions raised Guthier's concerns. Guthier opened the driver's door and again asked Harrison to step outside of the car. Harrison complied. DeVasto's body camera was activated about this time. Guthier and Harrison walked to the back of Harrison's vehicle. Harrison complied with Guthier's directive to interlock his fingers on his head and agreed to permit Guthier pat down his clothing. After the patdown, Guthier instructed Harrison to put his hands behind his back and told Harrison about the active arrest warrants from Kansas City, Kansas. Harrison denied that he had any active warrants.

When Guthier attempted to handcuff Harrison, Harrison pulled his arms out of Guthier's hands and spun around. Harrison then pulled away and punched Guthier in his face with a closed fist, hitting Guthier near his eye. Harrison yelled he did not have any warrants, and Guthier grabbed Harrison again and told him to relax. DeVasto saw the struggle and entered the melee. At some point, Harrison elbowed her in the face. The three then fell to the ground with both officers on top of Harrison. While on the ground, Harrison grabbed DeVasto's wrist, and as she struggled to escape his grasp, she scraped her right arm on the concrete curb. Throughout the struggle, both officers repeatedly told

3

Harrison to stop fighting and resisting, and they were not trying to hurt him. Guthier, during the tussle, saw the passenger look back at them and yelled repeatedly at the passenger to stay in the car. Other people were approaching to watch the ongoing struggle, which raised additional concerns by the officers.

The officers ultimately forced the supine Harrison onto his stomach. Harrison, however, continued to pull his hands away from the officers and attempted to get up, screaming that there were no warrants for him. With the ongoing struggle and the presence of bystanders, Guthier called for additional backup. Harrison's resistance hindered the officers' ability to complete the arrest. After several minutes, the two officers were able to handcuff Harrison's hands behind his back just as other officers arrived. Harrison was then placed in a patrol vehicle.

After the arrest, both officers' injuries were photographed. During trial, the officers identified pictures showing their injuries, and the photographs were admitted into evidence. Neither officer sought medical treatment for their injuries; both completed their shifts after the incident.

After Harrison was restrained, Guthier searched his vehicle. Guthier discovered an open bottle of vodka on the driver's side floorboard within reach of anyone sitting in the driver's seat. Upon opening and smelling the contents of the bottle, Guthier determined that the bottle contained vodka. Guthier admitted, however, that he did not have the contents tested and had drained the bottle of its contents before he placed the bottle into evidence.

As a result of this incident, Harrison was charged the next day in Johnson County District Court with two counts of battery on a law enforcement officer, one count of interfering with a law enforcement officer, one count of driving while his license was

4

suspended, and one count of transporting an open container. Later in an amended complaint, the State added a charge of one count of failure to use a seatbelt.

After several failed attempts at plea negotiations, the evidence was presented to a jury in June 2016. The State presented the testimonies of Guthier, DeVasto, and a third officer. In addition, the State presented the videos from the patrol car's dash cam as well as Guthier's and DeVasto's body cameras. Harrison presented no additional evidence at trial. Following instructions and jury deliberations, Harrison was convicted of all charges.

The court held a sentencing hearing for Harrison on August 26, 2016. The State requested the presumptive standard sentences which, because of a special sentencing rule, required the sentences for battery on law enforcement officers to run consecutive to the other counts. During the hearing, defense requested a durational departure avoiding the special rule; Harrison requested that all the sentences run concurrent for a 24-month sentence. The court rejected Harrison's request for a departure sentence and followed the special rule by ordering a controlling 42-month sentence on the felonies, concurrent jail sentences on the two misdemeanor charges, and a $10 fine for the seatbelt violation. The sentences were ordered to run consecutive to a Wyandotte County sentence from an earlier case.

*Did the District Court Abuse Its Discretion In Denying Harrison's Motion For Mistrial Because the Officer's Attempted Statement Regarding the Number of Active Warrants Issued for Harrison?*

On appeal, Harrison contends the trial court erred in denying his motion for mistrial based on an officer's attempt to testify about the number of active warrants pending when the encounter in this case occurred. Harrison asserts that the State agreed at a pretrial motion hearing to "limit the information about the outstanding warrants" and that the officer's testimony was contrary to that agreement. Harrison further argues that

5

he was prejudiced by the officer's testimony and that the court's ruling sustaining Harrison's objection and offer of a curative instruction was insufficient to mitigate the prejudice caused by the officer's testimony. He asserts that the testimony painted him in a negative light with the jury. Moreover, Harrison argues that it unfairly and prejudicially undermined his credibility with the jury because he was heard on the video to repeatedly assert that he had no active warrants. Finally, Harrison also argues that the prosecutor's questioning invited the officer to testify about prohibited matters.

Motions for mistrials in a criminal case are controlled by K.S.A. 22-3423(1). This statute authorizes a court to order a mistrial if prejudicial conduct "makes it impossible to proceed . . . without injustice to either the defendant or the prosecution." K.S.A. 22-3423(1)(c). In evaluating a motion for mistrial under this provision, the trial court must first decide if there is prejudicial conduct that will result in a fundamental failure in the proceeding. If so, the district court must next decide whether the conduct makes it impossible to continue the trial without injustice or whether the prejudicial conduct's damaging effect can be removed or mitigated by an admonition, jury instruction, or other action. *State v. Moyer*, 302 Kan. 892, 906, 360 P.3d 384 (2015).

On appeal, a trial court's evaluation of this two-step process is reviewed under an abuse of discretion standard. Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Moyer*, 302 Kan. at 906. In determining whether prejudicial conduct has occurred warranting a mistrial, this court must consider the entire context of the case.

*Pretrial Motions*

Before trial, the State moved under K.S.A. 60-455 seeking to admit evidence that Harrison had preexisting active warrants when the traffic stop occurred. The active warrants were used as a basis for his arrest. Although the State did not believe the

6

evidence was necessarily covered by that statute, it filed the motion as a precaution. The State argued that the evidence of the preexisting warrants was relevant to establish the reasons Harrison was arrested and to show Harrison's intent in resisting the officers. The State's motion mentioned that when Harrison was arrested, he had 5 nonextraditable warrants from Kansas City, Missouri, and 15 extraditable warrants from Kansas City, Kansas.

Several weeks afterward, Harrison filed a motion in limine. In his motion, Harrison asked the court to exclude any evidence of alleged prior bad acts, arrests, convictions, or interactions between Harrison and law enforcement. During a later hearing, defense counsel advised the court that the parties had an understanding that "the State does not have any intentions of talking about the specific details of the warrants, namely, how many there were, where they [were in] regards to." They also agreed to a limiting instruction telling the jury that the evidence about the warrants was only relevant to establish the reasons why the officers took the actions they did.

The issue was discussed again at the final pretrial conference where the prosecutor advised the court that the prior ruling was that "the existence of the warrants themselves is allowed to come in and then I agreed and I believe that was part of the ruling, we're not going to discuss what the warrants were for—." Harrison's counsel did not object to the prosecutor's statement of their agreement.

*The Trial Testimony*

During Officer Guthier's testimony, the prosecutor asked the officer if he learned from the dispatcher whether Harrison had any active warrants. Guthier agreed he was so told. The testimony then proceeded:

"Q. [Prosecutor]: What information were you given at this point in time?

7

"A. The dispatchers told me that he had 20—

"[Defense counsel]:  Objection. Judge, may we approach?

"THE COURT:  Sustained. Re-ask the question, please Counsel.

"Objection sustained.

"Q. [Prosecutor]:  Was there any indication just that he had warrants outstanding?

"A. Yes, there was.

"Q. And was there an indication as to whether those were out of Kansas City, Kansas?

"A. They were.

"Q. Okay. Now, when you get information . . . regarding warrants out of another jurisdiction here in Kansas, is there something that you need to check on before you make a decision as to whether you are going to make an arrest on the warrants?

"A. Yes. So, it is up to that individual agency who have the warrants on—if they have the manpower and/or the dollar amount is worth the labor, what they are paying an officer to drive to your jurisdiction to place them under arrest.

"So I asked dispatch to confirm the warrants, which is our procedure. Dispatchers will then call Kansas City, Kansas, Police Department and ask if they have these warrants, if they are showing active, are they still active, will you confirm them, and whether you have an officer for Kansas City, Kansas, Police Department respond to our location to take custody of them."

The issue on appeal arose when the prosecutor was questioning Officer Guthier's reaction when checking for active warrants on Harrison. It is unclear what information the prosecutor was attempting to elicit when Guthier mentioned the number 20, but there was an immediate objection which was immediately sustained. The prosecutor then walked the officer step-by-step through the typical process of confirming that out-of-jurisdiction warrants were still active and if the foreign jurisdiction wished to have the driver arrested.

*The Court's Response*

After Guthier's testimony was completed, the court initiated a recess and the jury was excused. During the recess, defense counsel requested a mistrial as a result of

Guthier's testimony that there were "over 20 active warrants" for Harrison. The defense argued that although it promptly objected, the jury heard the evidence and such evidence unduly prejudiced Harrison and his right to a fair jury trial. Harrison argued that the parties had agreed the testimony regarding his active warrants would not include the number of warrants, but only that there were active warrants. Counsel emphasized that he did not believe that the State intentionally elicited the information, but he claimed that a limiting instruction would not be sufficient to cure any prejudice.

The State opposed the motion. The prosecutor asserted that he had talked with the officer that questions regarding the warrants would not include the underlying grounds for the warrants. He also asserted that his questioning was not an attempt to elicit such information. The prosecutor also asserted that the number of warrants would have been relevant to explain the level of alertness the officers exercised during the traffic stop.

After hearing the arguments, the court denied the motion for mistrial. The court ruled that there was no real prejudicial effect from the officer's statement. When the court inquired about giving the jury a limiting or curative instruction, defense counsel declined, but he emphasized that he would object again if any such evidence was presented again. No additional evidence regarding the number of warrants or the nature of the underlying offenses was proffered.

*Conclusion*

The district court was obligated to decide whether the officer's statement inferring that Harrison had 20 active warrants when he was arrested caused a fundamental failure in the proceeding and if it made it impossible to continue the trial without injustice. See *Moyer*, 302 Kan. at 906. In this case, the motion for mistrial was made after Guthier completed his direct testimony which included the display of the dash-cam video and the

9

video from the officer's body camera. Thus, the district court had the opportunity to hear and see the bulk of the State's evidence.

Although the court's findings were brief, it concluded that any prejudice arising from the officer's brief testimony, after a prompt objection the court sustained, did not result in a degree of prejudice arising to an injustice that would affect the trial's outcome. See *State v. Corey*, 304 Kan. 721, 730-31, 374 P.3d 654 (2016).

> "'Violations of K.S.A. 2013 Supp. 60-455 are subject to the nonconstitutional harmlessness standard of K.S.A. 2013 Supp. 60-261. . . . Under that standard, the party benefitting from the error has the burden of showing that "there is no reasonable probability the error affected the trial's outcome in light of the entire record." [Citations omitted.]'" *State v. Sherman*, 305 Kan. 88, 119, 378 P.3d 1060 (2016).

Based upon the totality and quality of the evidence before the court at the time, the court did not abuse its discretion in ruling that the officer's statement did not warrant a mistrial. While the jury may have inferred Harrison had 20 active warrants, it also heard the undisputed testimony of the officers surrounding the actions that occurred when they attempted to arrest Harrison. The dash-cam video clearly showed Harrison striking Guthier in the face with his fist, Harrison and both officers tumbling to the ground while attempting to handcuff him, and Harrison resisting arrest by wrestling with both officers for several minutes.

Harrison also asserts the incomplete statement—"that he had 20"—adversely affected his credibility because he had repeatedly told the officers that he did not have any active warrants. Harrison's assertion ignores that even if there were no active warrants outstanding, Harrison had no right to attack Officer Guthier or to resist arrest. Kansas law has long established that a person is not authorized to use force to resist being arrested by a known law enforcement officer "'even if the person believes that the arrest

is unlawful and the arrest is, in fact, unlawful.'" *City of Wichita v. Cook*, 32 Kan. App. 2d 798, 799, 89 P.3d 934 (2004).

The parties' agreement relating to limiting testimony is less than clear because it was not reduced to writing or included in any order. Counsel for the parties, in describing their agreement, are not entirely consistent with what information was or was not to be divulged. Assuming, however, some order in limine was violated, Harrison has failed to show how the officer's incomplete statement, which was immediately interrupted with an objection that was sustained, deprived him of a fair trial. We note that Harrison does not dispute the sufficiency of the evidence to support any of his battery and resistance convictions in light of the rather incontrovertible video evidence presented at trial.

As a result, Harrison's argument fails.

*Was There Sufficient Evidence For the Jury To Conclude That Harrison Was in a Passenger Car Without Wearing a Seatbelt?*

On appeal, Harrison contends that there was not sufficient evidence to convict him for failure to wear a seatbelt. Harrison notes that the seatbelt statute in effect when he was arrested required the State to prove that he was operating a "passenger car" when the violation occurred; he asserts that the State presented no evidence to establish his vehicle met this definition.

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

11

K.S.A. 2016 Supp. 8-2503(a)(1) applies to any "occupant of either a *passenger car* manufactured with safety belts . . . who is 18 years of age or older." (Emphasis added.) He further argues that "passenger car" is defined in the statutes as "a motor vehicle, manufactured or assembled *after January 1, 1968, or . . . prior to 1968* which was ¶manufactured or assembled with safety belts, with motive power designed for carrying 10 passengers or fewer." (Emphasis added.) K.S.A. 2016 Supp. 8-2502.

None of the witnesses testified as to the make, model, or year of the vehicle Harrison was driving when he was arrested. While Harrison agrees the dash-cam video clearly showed the car Harrison was driving, he contends that the jury cannot determine whether his vehicle qualified as a "passenger car" without more direct evidence. He relies primarily on *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 203 P.3d 735 (2009). The decision in *Perez-Rivera*, however, had unique facts where the jury determined the victim's age. The State asserted her age could be inferred by the jury based upon her appearance in court and the fact that there had been evidence that she had been married two years before in Nevada. The court rejected that the jury would know the minimum age to marry in Nevada was 16 when no such evidence was presented. 41 Kan. App. 2d at 581-83.

Kansas law, however, has long held that a jury has the right to avail itself of such general knowledge as all lay people possess. *Norton Farms, Inc. v. Anadarko Petroleum Corp.*, 32 Kan. App. 2d 899, Syl. ¶ 8, 91 P.3d 1239 (2004); see *Isle v. Kaw Transport Co.*, 159 Kan. 110, 113-14, 152 P.2d 827 (1944) (using common knowledge to infer the cause of unattended truck rolling downhill). Moreover, it is not improper for a prosecutor to ask the jury to use its common sense when deciding whether the audible sound heard on a recording was the click of a gun being cocked. *State v. Schumacher*, 298 Kan. 1059, 1071-72, 322 P.3d 1016 (2014). Similarly, the jury could use ordinary experience to decide what, if anything, was being said on an audio recording and whether the additional sounds were signs of a struggle. *State v. Bollinger*, 302 Kan. 309, 321, 352 P.3d 1003

12

(2015). The video of a crime scene may be sufficient to permit the jury to reasonably infer where the victim was standing when the shooting started. *State v. Harris*, 297 Kan. 1076, 1083-84, 306 P.3d 282 (2013). Additionally, the jury can evaluate a videotape of a traffic stop to evaluate whether a driver was operating under the influence of alcohol. *State v. Johnson*, No. 102,929, 2011 WL 135023, at *1 (Kan. App. 2011) (unpublished opinion).

The video played to the jury and admitted into evidence clearly showed the car Harrison was driving. It was a small sedan, possibly a Nissan, and was obviously not designed to carry more than 10 people. The car was modern enough to have a brake light in the rear window as well as on the back of the car. It also was obviously manufactured with seatbelts because it was clear from behind the vehicle that the passenger was wearing a seatbelt. In addition, Guthier testified that he initiated the traffic stop because Harrison was not wearing a seatbelt, but saw him pull the seatbelt across himself when he recognized the patrol vehicle. Based upon the common knowledge of the jury, it could ascertain from the video that Harrison's vehicle qualified as a "passenger car" as defined by statute.

As a result, Harrison's claim that there was insufficient evidence to support his conviction for the seatbelt violation fails.

*Was the Jury Instruction Setting Forth the Elements of a Seatbelt Violation Clearly Erroneous?*

Similarly, Harrison also challenges the adequacy of the jury instruction telling the jury the elements of violation of the seatbelt statute. Harrison concedes that he failed to object to the instruction at trial, thereby invoking the clearly erroneous standard of review. The transcript confirms that Harrison made no objection.

13

When evaluating claimed errors in jury instructions, the appellate court follows a three-step process:

"(1) Determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). Whether a party has preserved a jury instruction issue affects the reversibility inquiry at the third step. 302 Kan. at 752; see also K.S.A. 2015 Supp. 22-3414(3) ('No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.') . . . .

"At the second step, we consider whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. [Citation omitted.] If the district court erred, and the error did not violate a constitutional right, 'the error is reversible only if [the court] determine[s] that there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."' [Citations omitted.]" *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016).

The instruction given by the court was as follows:

"Seventeen:  Count 6, failure to use a seat belt. Mr. Harrison is charged with failure to use a seat belt. Mr. Harrison pleads not guilty. To establish this charge, each of the following claims must be proved:  Mr. Harrison failed to have a safety belt properly fastened about his body; Mr. Harrison was an occupant of a vehicle in motion; this act occurred on or about the 30th day of July, 2015, in Johnson County, Kansas."

On appeal, Harrison contends the instruction is incomplete because it failed to advise the jury that the State was required to prove Harrison was driving a "passenger car." Harrison asserts that the omission of an "essential element" is clearly reversible and requires reversal of the conviction. He asserts that had the jury been properly instructed, the jury would have reached a different verdict on the seatbelt charge because there was

14

no evidence that Harrison was operating a passenger car. Harrison relies solely on *State v. Crawford*, 247 Kan. 223, 795 P.2d 401 (1990). Nevertheless, *Crawford* was not reversed because of instructional error, although that issue was raised. Instead, our Supreme Court held that the defendant was charged under the incorrect statute because the sex act that allegedly occurred did not constitute sodomy. 247 Kan. at 225-26.

The State, however, relies on *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), for the correct standard for review when a jury instruction omits an element of the crime charged. The *Neder* Court held that the omission of an element in a jury instruction may be harmless if the element were "uncontested and supported by overwhelming evidence." 527 U.S. at 17. Moreover, our Supreme Court adopted the *Neder* holding in *State v. Richarson*, 290 Kan. 176, 224 P.3d 553 (2010). In *Richardson*, our Supreme Court recognized that the omission of an element of a crime is subject to harmless error analysis where the reviewing court examines the record to determine whether the omitted element was uncontested and supported by such overwhelming evidence that the jury verdict would have been the same without the omission. 290 Kan. at 182-83 (citing *Neder*, 527 U.S. at 4).

When evaluating whether an instruction was clearly erroneous, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3) [Citation omitted.]" *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

In this case, the only missing element from the instruction was the requirement that Harrison be operating a "passenger car" within the meaning of K.S.A. 2016 Supp. 8-

2502. Here, the only evidence about the vehicle being a passenger car within the meaning of the seatbelt statute is undisputed and uncontroverted, that is, uncontested.

*Did the District Court Commit Reversible Error in Failing To Read a Response To a Jury's Question In Open Court In the Defendant's Presence?*

In his final issue on appeal, Harrison contends that the district court erred in responding to a jury question by sending a note back to the jury rather than bringing the jury into the courtroom to read the response. While there was no dispute that the court read the jury's question to counsel and to Harrison and that all were present to discuss the options and agreed to a specific response to the question, Harrison contends, however, that the court committed error in rejecting his request for the jury to return to the courtroom so the court's response could be read to the jury in his presence.

Both the United States Constitution and Kansas statutes mandate that a criminal defendant be permitted to be present during key portions of a criminal trial. A defendant in a criminal case has the right to be present at all critical stages of the trial. *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987); *State v. Herbel*, 296 Kan. 1101, 1106, 299 P.3d 292 (2013). "That right emanates from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. [Citations omitted.]" *State v. Davis*, 284 Kan. 728, 731, 163 P.3d 1224 (2007). Under the Fifth Amendment's Due Process Clause, a defendant has "'the right to be present at any stage of the criminal proceeding that is critical to its outcome *if his presence would contribute to the fairness of the procedure*.'" (Emphasis added.) *United States v. McChesney*, 871 F.3d 801, 808 (9th Cir. 2017).

Kansas statutes also provide that the defendant is to be present in certain stages of the criminal trial. K.S.A. 2016 Supp. 22-3420(d) states:

16

"The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. *The court shall notify the parties of the contents of the questions and provide them an opportunity to discuss an appropriate response. The defendant must be present during the discussion of such written questions, unless such presence is waived.* The court shall respond to all questions from a deliberating jury *in open court or in writing.* In its discretion, the court may grant a jury's request to rehear testimony. *The defendant must be present during any response if given in open court*, unless such presence is waived. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record. (Emphasis added.)

*Shifting Standard of Review?*

Harrison's brief relies upon caselaw relying on an older version of K.S.A. 22-3420(d), which was significantly changed in 2014. Before the 2014 amendments, the statute stated:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, *where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant*, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney." (Emphasis added.) K.S.A. 22-3420(3).

Harrison also relies upon *State v. King*, 297 Kan. 955, 305 P.3d 641 (2013), and *State v. Coyote*, 268 Kan. 726, 1 P.3d 836 (2000). In *King* and *Coyote*, our Supreme Court applied an unlimited standard of review because the issues raised alleged violations of constitutional standards. See *King*, 297 Kan. at 965; *Coyote*, 268 Kan. at 732. In *Coyote*, the defendant argued on appeal that the court's response to jury questions by sending back—after agreement by counsel and the defendant—written errors to the jury

17

questions violated his right to be present. 268 Kan. at 731-32. Although the statute changed after the trial, the court still held the handling of the jury question violated the defendant's constitutional right to be present.

In various preamendment cases, our Supreme Court has implicitly indicated that the pre-2014 statute and the constitutional right to be present were coextensive. For example, in *State v. Verser*, 299 Kan. 776, 326 P.3d 1046 (2014), our Supreme Court concluded that "any act or omission violating K.S.A. 22-3420(3) also violates K.S.A. 22-3405(1) . . . and the 'guarantee of the Sixth Amendment to the United States Constitution that a criminal defendant may be present at every critical stage of his or her trial.'" *Verser*, 299 Kan. at 788 (quoting *King*, 297 Kan. at 968).

Previous attempts to distinguish written responses from the court to the jury outside the defendant's presence have existed, but were later overruled. See *State v. Burns*, 295 Kan. 951, 956, 287 P.3d 261 (2012) (sending answer back to jury rather than reading answer in defendant's presence not a constitutional violation), *overruled by King*, 297 Kan. at 966. Since the amendment of K.S.A. 2016 Supp. 22-3420(d), there are indications from our Supreme Court that its analysis of the defendant's right to be present may require reconsideration of the continued viability of the rationale of its prior decisions. Because the State did not raise such an issue, our Supreme Court declined to reassess prior caselaw. *State v. Bolze-Sann*, 302 Kan. 198, 216, 352 P.3d 511 (2015). See also *State v. Robinson*, 306 Kan. 1012, 1033, 399 P.3d 194 (2017) (Because the State conceded error, the court will assume error occurred and apply the constitutional harmless error standard.). In his concurring opinion in *Bolze-Sann*, Justice Stegall discussed the inconsistency in our Supreme Court caselaw both pre- and post-2014 as it related to written responses to jury questions where counsel and the defendant have had an opportunity to confer on the appropriate response. *Bolze-Sann*, 302 Kan. at 220-26.

18

This court is duty bound to follow Supreme Court precedent, absent some indication our Supreme Court is departing from its previous position. *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015), *rev. denied* 303 Kan. 1078 (2016). While Justice Stegall in his concurring opinion in *Bolze-Sann* and his majority opinion in *Robinson* suggests the scope of the defendant's right to be present is ripe for reconsideration in light of statutory and other changes, the entirety of our Supreme Court has declined to date to do so.

Assuming arguendo that our Supreme Court is not departing from its prior decisions in *Verser* and *King*, because the error in this case was a constitutional error, we must apply the constitutional harmless error standard. Absent unique circumstances, however, the appellate courts have found that sending a response to a jury question in written form, provided that the response has been reviewed and agreed to by all counsel and the defendant, satisfies the constitutional harmless error standard under the following condition:  the State must establish that any error was harmless beyond a reasonable doubt. See *State v. Cooper*, 303 Kan. 764, 768, 366 P.3d 232 (2016); *Bolze-Sann*, 302 Kan. at 217.

> "Several factors help determine whether a violation of this right is harmless beyond a reasonable doubt: (1) the overall strength of the case against the defendant; (2) whether either party objected to the manner in which the judge handled the communication; (3) whether the judge's communication with the jury 'concerned a critical aspect of the trial or rather involved an innocuous and insignificant matter,' and also how the communication was conveyed to the jury; and (4) the ability of any posttrial remedy to 'mitigate the constitutional error.' [Citations omitted.]" *Bolze-Sann*, 302 Kan. at 216-17.

In applying the various factors from *Bolze-Sann*, we note that the State has shown the error was harmless beyond a reasonable doubt. In this case, the jury's question was "May we have the definition of battery and of bodily harm?" While this question relates

19

to the most serious charges in the complaint, the trial judge's initial instructions to the jury were clear. The court defined the charges of battery against a law enforcement officer required the State to prove that Harrison knowingly caused bodily harm to the identified officer; that the officer was a uniformed or properly identified law enforcement officer; that the officer was engaged in the performance of his/her duty; and the act occurred on or about July 30, 2015, in Johnson County, Kansas. The term "knowingly" was defined as to each charge. Harrison offers no argument that the original instructions were wrong or insufficient.

Based upon the various factors listed earlier, the court's actions in responding to the jury's question was harmless beyond a reasonable doubt. First, the question was focused on the battery against a law enforcement officer charges. In light of the testimony, video camera footage, and the photographs of the officers' injuries, the overall strength of the case against Harrison on those charges was very strong. Second, the question is whether the defendant objected to the manner in which the judge handled the communication. While Harrison ultimately asked for the court's answer to be read in open court, this request was not made until after the court had sent its response to the jury and after the State had raised the issue.

The third factor is whether the judge's communication with the jury concerned a critical aspect of the trial or whether the communication involved an innocuous and insignificant matter. Moreover, the third factor also concerned how the communication was conveyed to the jury. Clearly the jury's question, seeking definitions for terms in the two most serious charges related to an important factor; however, the judge's written response was agreed to by both parties.

Finally, we consider the ability of any posttrial remedy to "mitigate the constitutional error." On appeal, Harrison argues that having the response read in open court "ensures there is uniformity in the information" the jurors receive. He argues that

20

there is no assurance if a written response is sent that all jurors will see the response or have a common understanding of the response.

Nevertheless, even if the jurors somehow either did not get the response or did not appreciate it, they were fully informed about the substantive law. The trial court's response simply and properly referred the jurors to the information that they had already received in the instructions. The jurors were told:  "The instructions you have been provided is the law you must apply in this case. No further instructions will be provided."

The process of conveying the response to the jury, even if the response was never delivered, it could not have materially influenced the outcome. This is especially true on the battery of the law enforcement officer charges given the strong evidence of guilt. Our Supreme Court took this approach in *Bolze-Sann*, 302 Kan. at 215-18. Accordingly, we affirm.

Affirmed.